(79 N. W. Rep. 981.)

---

### CHARLES E. WILSON *vs.* CASS COUNTY.

Opinion filed June 15, 1899.

**Sheriffs—Fees.**

> Under chapter 67, Laws 1897, a sheriff is not entitled to a fee of five dollars upon each description for selling lands for delinquent taxes pursuant to judgment, where such lands are bought in by the treasurer for the county.

Appeal from District Court, Cass County; *Pollock,* J.

Action by Charles E. Wilson against the County of Cass.  Judgment for defendant, and plaintiff appeals.

Affirmed.

*Cochrane & Corliss,* for appellant.

The legislature intended to compensate the sheriffs for making sales under Chap. 67, Laws 1897.  More acts are to be performed by the sheriff under this law than on other judicial sales.  They are given compensation for levying a writ of attachment and for collecting moneys under the provisions of section 2 of the act, viz: "the same fees as are allowed by law upon execution in a civil action."  Sec. 25, Ch. 67, Laws 1897.  The fee is given either when he receives money or when he collects it without actually receiving it.  Where the plaintiff in execution bids in the property so that not a dollar is actually received by the sheriff, the sheriff is nevertheless entitled to his fees under the statutes giving him fees for collecting money under execution.  *Sharvey* v. *Iron Co.,* 58 N. W. Rep. 864; *Jurgens* v. *Hauser,* 47 Pac. Rep. 809; *Litchfield* v. *Ashford,* 30 N. W. Rep. 649.  The cases which appear to hold the contrary rest upon the peculiar phraseology of the statutes giving fees only on moneys actually received.  *State* v. *Prince,* 37 Pac. Rep. 291; *Coleman* v. *Ross,* 12 Pac. Rep. 648; *Fiedeldey* v. *Diserens,* 26 Ohio St. 312.; *Peery* v. *Wright,* 45 Pac. Rep. 46.  The word "collection" as used in this statute means that the sheriff has through the discharge of the duties cast upon him by law in and about the sale of property under process been the procuring cause of the plaintiff in the process realizing the amount due him.  Where the creditor receives the money before sale the sheriff is entitled to his fee.  *Hildreth* v. *Ellis,* 1 Caines Cas. 192; *Alchin* v. *Wells,* 5 Term. Rep. 470; *Campbell* v. *Cothran,* 56 N. Y. 282; *Bank* v. *Coal Company,* 68 N. Y. 585-590; *Parsons* v. *Bowdoin,* 17 Wend. 14; *United States* v. *Haas,* 5 Fed. Rep. 29; *Morse* v. *Gibbons,* 43 Cal. 377.  See, also, *Baldwin* v. *Shaw,* 35 Vt. 272; *Boswell* v. *Dingley,* 4 Mass. 411; *Bullen* v. *Ansley,* 6 Esp. N. P. 111; *Rawstorne* v. *Wilkinson,* 4 M. & S. 256; *Earle* v. *Plum-*

*mer,* 1 Salk. 332; *Bolton* v. *Lawrence,* 9 Wend. 435; *Scott* v. *Shaw,* 13 Johns. 378; *Adams* v. *Hopkins,* 5 Johns. 253; *Miles* v. *Harris,* 104 Eng. Com. Law, 550; *Arnold* v. *Dinsmore,* 3 Cold. 235. The person or corporation on whose behalf the sheriff executes the process is liable for his fees. *Jurgens* v. *Hauser,* 47 Pac. Rep. 809; *Sharvey* v. *Iron Co.,* 58 N. W. Rep. 864; *Morse* v. *Gibbons,* 43 Cal. 377; *Baldwin* v. *Shaw,* 35 Vt. 272; *Campbell* v. *Cothran,* 56 N. Y. 281; *Boswell* v. *Dingley,* 4 Mass. 411; *Hildreth* v. *Ellis,* 1 Caines Cas. 192; *Rawstorne* v. *Wilkinson,* 4 M. & S. 256.

*Morrill & Engerud,* for respondent.

The law makes it the duty of the treasurer to attend at the sale and receive all money paid. Sec. 13, Ch. 67, Laws 1897. In cases where the property is bid in for the county no money is paid over, and there is no money to be received by any one. The words "money received and disbursed" as used in section 2082, Rev. Codes, and the words "receiving or collecting money" in the delinquent tax law of 1897 have the same significance. Sec. 5106, Rev. Codes.

BARTHOLOMEW, C. J. We are called upon in this case to construe an obscure statute. We can get but little light from authority. We grope in darkness in search of legislative purpose. In 1897 the legislature sought to clear up all delinquent real estate taxes for and prior to the year 1895. To this end it enacted chapter 67, Laws 1897. The act required the county treasurer to make out a list of lands on which there were delinquent taxes for the years named, with the amount of such tax, and file the same with the clerk of the District Court. Certain proceedings were then to be had which would result in a judgment against each description of land for the amount of such taxes, interest, penalties, and costs. If these judgments were not paid in a certain time, a copy was to be placed in the hands of the sheriff, and he was to advertise and sell the lands. But section 2 of the act provided that where the tax, exclusive of interest and penalties, upon any tract exceeded $100, the treasurer might make an affidavit that the property was rented, and thereupon the clerk should issue a writ of attachment, and place it in the hands of the sheriff, who should attach the rent and collect the same, and, if necessary, might sue for the same in his own name. The latter part of section 25 declares: "To the sheriff shall be allowed for serving the writ of attachment provided by section two, and receiving or collecting any money under the provisions of this act, the same fees as are allowed by law upon an execution in a civil action, and in case he brings suit as in section two provided, such additional compensation as the Court may allow." Section 2082, Rev. Codes, which fixes the fees of sheriffs, contains the following: Subdivision 11: "Levying writ of execution and return thereof, one dollar." Subdivision 21: "Advertising sale in newspaper, in addition to the publisher's fees, sixty cents." Subdivision 27: "Commission on all money received

and disbursed by him on execution, order of sale, order of attachment, decree or on sale of real or personal property shall be: (a) For each dollar not exceeding four hundred dollars, three cents. (b) For each dollar above four hundred dollars, and not exceeding one thousand dollars, two cents. (c) For each dollar in excess of one thousand dollars, one cent." Subdivision 28: "In all cases in the District Court where persons in whose favor the execution or order of sale is issued, shall bid in the property sold on execution or judgment, the sheriff or person making such sale shall receive the following compensation: (a) When the amount for which the property is bid in does not exceed one thousand dollars, the sum of five dollars and no more. (b) When the amount for which the property is bid in exceeds one thousand dollars, the sum of ten dollars and no more."

Plaintiff was sheriff of the defendant county. A copy of the tax judgment, duly rendered, under seal, was placed in his hands, and he properly conducted the sale thereunder. A large number of tracts were bid in for the county by the treasurer under the provisions of the law. There were no attachments under the provisions of section 2. The sheriff presented his fee bill to the board of county commissioners, claiming a fee of $5.60 for each description bid off for the county; the judgment in each instance being less than $1,000. The board refused to allow the bill in whole or in part. Plaintiff brought action to recover the same, and a general demurrer to his complaint was sustained. He appeals from the order, and the only question presented by the demurrer is whether or not he is entitled to such fees, under the act.

With some misgivings, we reach the conclusion that the order must be affirmed. It is respondent's contention that the sheriff is allowed fees only for services under section 2, while appellant plants himself upon the wording of the statute which says "receiving or collecting money under the provisions of this act"; and he cites authority to sustain the position that under an execution sale the sheriff "collects" the money realized, although he may never handle a dollar of it, and although the judgment creditor may bid in the property, and no money ever be paid over. We think the case at bar must be differentiated from that line of authority. We quote the thirteenth section of the act: "The sheriff shall sell by public vendue each piece or parcel of land separately in the order in which they are described in the judgment and by the description therein; but if the sum bid for any piece or parcel shall not be paid before the sale closes, he shall again offer such piece or parcel for sale. In offering the lands for sale, he shall state the amount for which each piece or parcel is to be sold, and he shall first offer each piece or parcel to the bidder who will pay the amount for which it is to be sold for the shortest term of years in such piece or parcel. If no bidder shall offer to pay such amount for any term of years, in the piece or parcel so offered, he shall then offer the same in fee to the highest bidder who shall bid not less

than the amount for which the same is to be sold. If no bidder offer to pay such amount for a term of years, and no bidder shall bid an amount equal to that for which the piece or parcel is to be sold, then the county treasurer shall bid in the same for the state or county at such an amount. The treasurer shall attend at the sale and receive all moneys paid thereon." While it is true that the sheriff makes the sale, yet there is another county officer who is required to "attend at the sale and receive all moneys paid thereon." It is not even the theory of the law that the sheriff should ever handle the money, or be in any manner responsible for it. The duty and responsibility are all thrown upon the treasurer. It was not the legislative intent that the sheriff should be regarded as "receiving or collecting" this money. Other provisions make this clearer. The sheriff sells under a certified copy of the judgment placed in his hands. He is not required to search for any property or make any levy. His copy of the judgment is his sole authority, both as to amount and property to be sold. Specific costs are allowed when attachments issue, but the writ, in terms, requires the sheriff to collect such costs under the attachment,—both his own and those allowed to the clerk. The only other costs mentioned in the statute are the clerk's costs as specified in section 25, but such costs must be included in the judgment, and the reason for the provision is plain. Under the provisions of section 6, the judgment must fix the exact amount of the lien against each description; and there is no authority in the law by which the amount of the lien thus fixed can be enlarged, nor is there any provision for collecting any accruing costs.

Again, appellant claims that he is entitled to the same commissions or fees that he would receive on sales on execution; in other words, if the property be sold to a third person, he would be entitled to a commission of 3 cents on the dollar for the first $400, and decreasing as the amount grew larger, while, if the sale be to the judgment creditor (and appellant claims the county would be the judgment creditor in this case), he would be entitled to a fee of $5 if the amount bid did not exceed $1,000, or $10 if it exceeded that sum. Now, section 13 of the act requires the sheriff, in offering the land for sale, to state the amount for which each tract is to be sold. If it is to be sold for an amount to include his fees, how can he make such announcement? The amount depends entirely upon who purchases. To illustrate, let us assume that the judgment against a certain tract is $5. If it is to be sold to a third party for an amount to include the sheriff's fees, it must be sold for $5.15; but, if to the county, it must be sold for $10. Which shall the sheriff announce? Certainly not the latter, because that would require a third person to bid nearly double what would be required to satisfy the judgment. But, if he announce the former, then, if the treasurer bid the tract in, he is limited to that sum, because said section 13 declares, "If no bidder shall bid an amount equal to that for which the piece or parcel is to be sold,

then the county treasurer shall bid in the same for the state or county at such an amount." The fact is, the moment we undertake to add to the judgment an amount to cover sheriff's fees, we introduce an element of confusion that renders the statute impossible of execution. The legislature never contemplated anything of that kind ,but did contemplate that each tract should be sold for the exact amount established against it as a lien by the judgment of the court. So construed, the statute is harmonious and consistent .in its operation, but to some extent inconsistent and incongruous in its wording. But we are required to regard the intent, rather than the wording. Appellant concedes that it was competent for the legislature to impose duties upon him for which it furnished no compensation, and that he is entitled to no compensation unless authority therefor can be found in this statute. We find no such authority; hence the order sustaining the demurrer to the complaint is affirmed. All concur.

### ON PETITION FOR REHEARING.

The vigorous petition of learned counsel for a rehearing in this case requires notice. Counsel misapprehend the scope of the decision when they claim that it requires sheriffs to pay advertising expenses out of their own pockets. Sheriffs are required to post three notices of sale, and also to publish such notice in the newspaper designated by the county board. But in practice such publisher's fees are always paid by the county,—the sheriff incurs no liability. That plaintiff so understood it is clear from the fact that he claimed nothing on that account in his complaint. True, he claimed 60 cents upon each description for advertising, but that is simply his allowance in addition to publisher's fees, under subdivision 21, § 2082, Rev. Codes. As to that claim, we may say that he may have been entitled to 60 cents for advertising the sale under the tax judgment. He publishes one brief notice, which, while it contains no descriptions, answers for all descriptions contained in the judgment. By no possible construction could he be allowed 60 cents for each description contained in the judgment. The single fee is too infinitesimal for the law's notice.

The law of 1897 does not undertake to change the general policy of this state. The treasurer is the collector of public revenue, not the sheriff. Whatever comes to the hands of the sheriff under an attachment under section 2 of the act is turned over to the treasurer, not paid into court. At the sale the treasurer receives the money. All through the act the treasurer is the collecting officer for the county. We are unable to conceive how the sheriff can receive or collect money under this act, except under the attachment provisions; and his fees therein are specially fixed, and, if not collected on the attachment, they go into the judgment. All the clerk's fees for services before and after judgment are included in the judgment. The terms of the judgment are specific. The amount of the lien must be declared in the judgment. True, sec-

tion 11 uses the words "accrued costs" (not accruing costs), but full significance may be given to the words, if they cover the costs accrued and included in the judgment.

To avoid the position taken in the original opinion, counsel now argue that, since the money upon these sales is never received and disbursed by the sheriff, as to such sales he is in the same position that he occupies when the judgment creditor becomes the purchaser under execution, and hence there can be no uncertainty as to the amount of his fees. They must be $5 or $10 for each sale, depending upon the amount of the tax, and hence the amount for which the land must be sold can be announced in each instance. We cannot subscribe to this. How it can be said that the judgment creditor is the purchaser, when the land is sold to a stranger, we do not comprehend. Moveover, we do not hesitate to say that thus construed the statute would be an outrage upon the taxpayer. It is well known that the great majority of tax delinquencies are for small amounts assessed against the scanty homes of labor, or against outlying lots of little value, where the tax is but a few dollars,—often less than one dollar. To add to that sum a sheriff fee that would double or quadruple the tax, and compel the payment of the entire sum in order to accomplish redemption, would work an extortion hitherto unknown, even in the harsh and relentless proceeding of taxation. To illustrate this, we need only say that it is admitted that upon this basis plaintiff's fees for the tax sale of one year in the County of Cass would exceed $11,000. It has never been the policy of the legislature of this state to wrest money from the taxpayer, and devolve fortunes upon county officials, at any such high-pressure speed. This Court will not hold that the legislature so intended, until its language is free from uncertainty. Rehearing denied.